UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| OTIS M. KELLY, JR.,<br>Petitioner, | Case No. 1:11-cv-254 |
| vs. | Dlott, J.<br>Litkovitz, M.J. |
| WARDEN, LONDON<br>CORRECTIONAL INSTITUTION,<br>Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the London Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 4). This matter is before the Court on the petition, respondent's motion to dismiss, and petitioner's response in opposition to the motion to dismiss. (Docs. 4, 17, 20).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals, Twelfth Appellate District, provided the following summary of the facts that led to petitioner's conviction and sentence:[1]

> {¶ 2} Detective Mike Hackney of the Butler County Sheriff's Office, Drug and Vice Investigations Unit, received information from several confidential informants that Sudinia Johnson had recently sold several kilos of cocaine, and that he had arranged to pick up between seven to ten additional kilos for sale and distribution. Hackney and two other drug enforcement agents performed a trash pull at Johnson's home address, and also placed a global positioning system (GPS) on Johnson's van. As a result of the trash pull, Hackney found multiple receipts for gas purchases within the same day from stations in the Chicago area and Cincinnati.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

{¶ 3} Hackney continually tracked the GPS, and on the Tuesday following the trash pull, the GPS indicated that Johnson was located at a shopping center near Chicago. Hackney made several attempts to contact Chicago law enforcement to verify Johnson's location. A worker from the Butler County Sheriff's office indicated that his brother, Rudy Medellin, lived in the Chicago area and was familiar with the shopping center at which Johnson was located. Hackney contacted Medellin, a retired immigration and customs enforcement officer, and asked him to confirm that Johnson's van was in fact located at the shopping center in Chicago.

{¶ 4} Medellin located Johnson's van at the exact location indicated on the GPS tracker and began relaying information to Hackney regarding two men inside the vehicle. Medellin continued his surveillance, and eventually followed the van to a residence. Medellin saw the two men exit the van and enter the home, and later saw one man exit the house carrying a box. The man, later identified as Johnson, got into the van and drove away. At the same time, the other man, later identified as Kelly, pulled out of the garage in a Ford Taurus that had Ohio plates. Medellin continued to follow Johnson's van and the Ford until the vehicles reached the Butler County area.

{¶ 5} As Medellin followed the vehicles, Hackney communicated with law enforcement officials along the route to coordinate efforts to make traffic stops on both vehicles. At some point, the two vehicles separated and Medellin continued to follow Kelly, while the GPS continued to track Johnson's van. Johnson was eventually pulled over, and police began to focus on Kelly. Hackney directed the officers to look for cause to perform a traffic stop on the Ford.

{¶ 6} Deputy Eric Betz with the Butler County Sheriff's Office was patrolling with his partner Deputy Milton Carpenter when they received a call from Hackney instructing them to watch for the Ford. Soon after Hackney's call, Betz and Carpenter spotted a Ford matching the description given by Hackney, and began following it. Within a short distance, Betz, the passenger in the police cruiser, observed Kelly following too closely to the SUV driving in front of the Ford. Betz and Carpenter then initiated a traffic stop.

{¶ 7} Carpenter approached the Ford on the driver's side, as Betz approached the passenger's side door. The deputies asked Kelly for his license, and had him exit the car. According to Betz's testimony at the motion to suppress hearing, before Kelly exited the car, he appeared very nervous and was "moving around in the vehicle." When the deputies asked Kelly where he was coming from, he responded that he had been at his mother's apartment complex. The deputies then placed Kelly in the back of their police cruiser.

{¶ 8} Approximately 30 seconds after the traffic stop, a state trooper and a Hamilton County canine unit arrived on the scene and walked drug detecting dogs around the Ford. The state Trooper's dog indicated the presence of drugs at the

2

rear bumper area of the car, and the Hamilton County canine indicated at the same position. Upon searching the trunk area, Hackney found a hidden compartment that contained seven kilos of cocaine.

(Doc. 17, Ex. 12, pp. 1-3).

## II. PROCEDURAL HISTORY

### State Trial and Appellate Court Proceedings

On November 5, 2008, the Butler County, Ohio grand jury returned an indictment charging petitioner with one count of trafficking in cocaine, in violation of Ohio Rev. Code § 2925.03(A)(2), and one count of possession of cocaine, in violation of Ohio Rev. Code § 2925.11. (Doc. 17, Ex. 1). Petitioner entered a plea of not guilty to all charges.

Prior to trial, petitioner filed a motion to suppress evidence allegedly obtained as a result of an unlawful traffic stop and warrantless search of petitioner's vehicle. (Doc. 17, Ex. 2). On March 10, 2009, the state trial court denied petitioner's motion. (Doc. 17, Ex. 5).

On September 3, 2009, petitioner withdrew his not guilty plea and entered a plea of no contest and jury waiver. (Doc. 17, Ex. 6). The trial court entered a judgment of conviction on September 9, 2009. (Doc. 17, Ex. 7). The trial court merged the trafficking in cocaine count into the possession of cocaine count, and sentenced petitioner to a total sentence of eleven years. *Id.*

On October 8, 2009, petitioner filed a notice of appeal to the Ohio Court of Appeals. (Doc. 17, Ex. 8). Petitioner raised one assignment of error with three underlying issues presented for review and argument:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING HIS MOTION TO SUPPRESS EVIDENCE.
>
> Where a law enforcement officer initiates a traffic stop in the absence of probable cause, or a reasonable, articulable suspicion, that a person has committed, is committing, or is about to engage in, criminal activity or a traffic violation, a trial court errs in denying a motion to suppress evidence challenging the lawfulness of the stop and evidence emanating from that stop.

3

> Where a law enforcement officer restrains a suspect of his movement by placing him in the back seat of a police cruiser, and where the officer indicates in testimony that the suspect was not free to leave at that time, an arrest has occurred and, in the absence of probable cause to believe that the suspect has committed, is committing, or is about to engage in, criminal activity, a trial court errs in denying a motion to suppress evidence.
>
> Where a law enforcement officer initiates a traffic stop with no intention of issuing a traffic citation and does not undertake any procedures, such as a license or background check, typically associated with investigation of a suspected traffic violation, the detention of a motorist is unreasonable and a trial court errs in denying a motion to suppress evidence challenging the reasonableness of that detention.

(Doc. 17, Ex. 9). On August 2, 2010, the Ohio Court of Appeals overruled petitioner's assignment of error and affirmed the judgment of the trial court. (Doc. 17, Ex. 12).

On September 16, 2010, petitioner filed a pro se application for delayed reconsideration of direct appeal. (Doc. 17, Ex. 13). The Ohio Court of Appeals denied petitioner's application on October 19, 2010. (Doc. 17, Ex. 14).

### Ohio Supreme Court

On December 8, 2010, petitioner filed the first of two pro se petitions for writs of procedendo to the Ohio Supreme Court. (Doc. 17, Ex. 15). Petitioner raised one proposition of law:

> Whether the state and federal constitutional rights of Relator were violated by respondents' refusal to consider the United States Supreme Court's decisions in Florida [v.] Royer, 460 U.S. 491, 102 S.Ct. 1319, 75 L.Ed. 2d. 229 (1983) and Florida [v]. Wells, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed. 2d. 1.

*Id.* at 5. The respondents, Ohio Court of Appeals Judges Bressler, Powell and Young, filed a motion to dismiss on December 27, 2010. (Doc. 17, Ex. 16). On February 1, 2011, petitioner filed a motion for voluntary dismissal of the writ of procedendo. (Doc. 17, Ex. 17). Therein, petitioner indicated that he did not fully understand the correct procedure for seeking a

4

discretionary appeal. *Id.* at 2. The Ohio Supreme Court granted petitioner's motion for voluntary dismissal on February 4, 2011. (Doc. 17, Ex. 18).

On February 17, 2011, petitioner filed a second writ of procedendo, raising the same proposition of law as his December 8, 2010 writ. (*See* Doc. 17, Ex. 19, p. 5). Respondents again filed a motion to dismiss, arguing that because there were no outstanding matters pending before respondents, that petitioner's complaint failed "to articulate any facts showing that Respondents have either refused to render a judgment or that they have unnecessarily delayed a proceeding to judgment." (Doc. 17, Ex. 20, p. 1). On May 4, 2011, the Ohio Supreme Court dismissed the action based on respondents' motion. (Doc. 17, Ex. 21).

Petitioner does not appear to have filed a direct appeal to the Ohio Supreme Court. (*See* Doc. 17, Ex. 22 & 23).

### Federal Habeas Corpus

Petitioner commenced the instant federal habeas corpus action on April 6, 2011. (Doc. 1). Petitioner raises one ground for relief in his petition:

> Petitioner is being held in violation of state and federal Constitutions in that his rights to the Fourth Amendment were violated.

(Doc. 4, p. 6).

Respondent opposes the petition, arguing that the petition should be dismissed because petitioner's single ground for relief is not cognizable in habeas corpus and, alternatively, that the claim is procedurally defaulted. (Doc. 17, pp. 10-17).

### III. RESPONDENT'S MOTION TO DISMISS SHOULD BE GRANTED

In his single ground for relief, petitioner contends that his rights under the Fourth Amendment were violated. Petitioner argues that the evidence in the state court proceeding demonstrates that no probable cause existed to make the initial traffic stop, that his being placed

5

in the police car during the search amounted to an unconstitutional seizure, and that the warrantless search of his car was conducted without probable cause or an exception to the warrant requirement. (Doc. 20, pp. 17-19). On this basis, petitioner contends that the Ohio appellate court's decision was based on an unreasonable determination of the facts and his motion to suppress should have been granted. *Id.* at 17, 22. Finally, as to respondent's contention that his claim is procedurally defaulted, petitioner argues that filing writs of procedendo to the Ohio Supreme Court gave the Ohio courts a full opportunity to resolve any constitutional issue and the claim is therefore not defaulted. *Id.* at 23.

The Ohio Court of Appeals addressed the merits of petitioner's claims and dismissed the assignment of error as follows:

> {¶ 12} In his assignment of error, Kelly argues that the trial court improperly denied his motion to suppress. This argument lacks merit.
>
> {¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, Preble App. No. CA2006–10–023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. Id. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, Butler App. No. CA2005–03–074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.
>
> A. Traffic Stop
>
> {¶ 14} Kelly first claims that the police lacked probable cause or a reasonable articulable suspicion that he had committed a traffic violation when they stopped him. Instead, Kelly asserts that the officers pulled him over on purely pretextual grounds, therefore violating his constitutional rights.
>
> {¶ 15} The Fourth Amendment to the United States Constitution protects persons from unreasonable governmental searches and seizures. *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675. Regarding the legality of an initial traffic stop, "where a police officer stops a vehicle based on probable cause that a traffic

6

violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, (1996), 76 Ohio St.3d 3, 1996-Ohio-431, syllabus. An officer's direct observation that a vehicle is following another vehicle too closely provides probable cause to initiate a lawful traffic stop. *State v. Perry*, Preble App. No. CA2004–11–016, 2005-Ohio-6041, ¶ 12.

{¶ 16} According to R.C. 4511.34, "the operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway."

{¶ 17} Deputies Betz and Carpenter observed Kelly following the SUV in front of him too closely, and they therefore had probable cause to initiate a traffic stop under R.C. 4511.34. At the hearing on the motion to suppress, Betz testified that when he and his partner began following Kelly, he noticed that Kelly's car was traveling "just a few feet" behind the SUV. As the passenger in the police cruiser, Betz was able to focus on Kelly's vehicle and observed Kelly driving between 30 and 35 m.p.h. State Trooper Shawn Simms also testified that he was following Betz's police cruiser and from his vantage point, he could see Kelly's car following too closely to the SUV. Although Simms was behind the police cruiser, he testified that he could see the position of Kelly's car clearly because they were traveling down a hill and there was a slight curve in the road so that he could see the traffic in front of him. According to Simms's estimate, Kelly's car was traveling "less than a car length" behind the SUV.

{¶ 18} Kelly now argues that Betz and Simms's testimony should be discredited because they did not state in their testimony what constitutes a reasonable and prudent distance under R.C. 4511.34. However, several Ohio courts and federal courts applying Ohio law have held that police may use a general rule of one car length for every 10 m.p.h. the car is traveling as an indicator that a driver has violated the statute. *See State v. Meza*, Lucas App. No. L–03–1223, 2005-Ohio-1221, ¶ 19; and *United States v. Dukes* (C.A.6, 2007), 257 Fed.Appx. 855, 858.

{¶ 19} According to Betz's estimation, Kelly was traveling between 30 and 35 m.p.h. At that speed, and according to the general rule, Kelly should have maintained a three-car distance between himself and the SUV in front of him. However, Betz testified that Kelly was traveling only a few feet behind the SUV, and Simms testified that Kelly was less than one car length behind the SUV. Even absent direct testimony regarding what Betz and Simms considered a reasonable and prudent distance under the statute, Kelly's following distance was a clear violation of the general rule specific to R.C. 4511.34.

7

{¶ 20} Based on Betz and Simms's testimony, the trial court properly concluded that the traffic stop was lawfully initiated after the officers observed Kelly following too closely. In light of the probable cause created by the traffic violation, the fact that law enforcement may have been looking for a reason to stop Kelly's vehicle is irrelevant.

### B. Placement in Police Cruiser

{¶ 21} Kelly next asserts that his motion to suppress should have been granted because he was arrested without probable cause when Deputies Betz and Carpenter placed him in their police cruiser after initiating the traffic stop.

{¶ 22} This court has consistently held that an officer does not effectuate an arrest by merely placing a person in the back of a police cruiser. "Having an individual sit in a police cruiser for a short time to answer a few questions does not necessarily elevate the situation to something greater than an ordinary traffic stop. This is true whether the individual is being requested to stay while an accident report is completed or relevant facts are ascertained. An individual may also be temporarily restrained either for his own safety or that of the officer." *State v. Johnson* (May 1, 2000), Clermont App. No. CA99–06–061, ¶ 8–9. "Confining an individual to the police cruiser is not a custodial placement if it is part of the investigation, even if the suspect in the police cruiser is not free to leave." *In re M.D.*, Madison App. No. CA2003–12–038, 2004-Ohio-5904, ¶ 18.

{¶ 23} Kelly was placed in the police cruiser not as an arrest but according to the officers' need to ascertain relevant facts in the investigation. After Kelly exited the car, the deputies placed him, without handcuffs, in the back of their cruiser and then continued to gather facts. While Kelly was in the cruiser, the other officers and canine units were on the scene performing their normal fact-finding and investigatory duties. *See State v. Bartone*, Montgomery App. No. 22920, 2009-Ohio-153, ¶ 22 (finding appellant was not arrested where he was placed in a police cruiser "while the drug-sniffing dog was present"). Given these circumstances, Betz and his partner were justified in placing Kelly in the back of the cruiser as law enforcement continued to gather facts, and that placement did not constitute an arrest that required probable cause.

### C. Length of Stop

{¶ 24} Kelly also challenges the duration of the traffic stop specific to the deputies' failure to use the time to issue a traffic citation for following too closely or perform any license or background checks typically associated with investigation of a suspected traffic violation.

{¶ 25} "In conducting a stop of a motor vehicle for a traffic violation, an 'officer may detain an automobile for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped.' However, an

8

investigative stop may last no longer than is necessary to effectuate the purpose of the stop. Thus, when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. This time period also includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *State v. Howard*, Preble App. Nos. CA2006–02–002, CA2006–02–003, 2006-Ohio-5656, ¶ 14–15. (Internal citations omitted). Furthermore, a canine sniff of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop, and an alert by a trained narcotics dog provides law enforcement with probable cause to search the vehicle for contraband. *Howard* at ¶ 17.

{¶ 26} Deputy Betz testified that in his experience, he usually takes approximately 10 to 15 minutes to conduct a traffic stop, check registration, and issue a ticket. The record indicates that the canine units were on the scene of the stop within 30 seconds and that the actual dog sniff was performed within "minutes." Trooper Shawn Simms also testified that his canine alerted to drug presence "less than five minutes" after the stop was initiated.

{¶ 27} The record is therefore clear that the canine sniff occurred well within the 10 to 15 minutes Betz normally takes to perform a traffic stop and within the time period necessary to effectuate the original purpose of the stop. The fact that the deputies neither contacted the dispatcher to verify Kelly's license and registration information nor issued a traffic citation for Kelly's violation of R.C. 4511.34 is irrelevant when they had probable cause to initiate the lawful traffic stop. *See, State v. Keathley* (1988), 55 Ohio App.3d 130 (affirming trial court's denial of appellant's motion to suppress where officer had probable cause for initiating a traffic stop and issued a citation for driving under suspension rather than a citation for the traffic offense for which appellant was originally stopped).

{¶ 28} Having found that the deputies had probable cause to stop Kelly's vehicle for following too closely, that Kelly was not under arrest during the time he sat in the police cruiser, and that the stop's duration was proper, the trial court did not err in denying the motion to suppress. Kelly's assignment of error is overruled.

(Doc. 17, Ex. 12, pp. 4-9).

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494–95. The Sixth Circuit has developed a two-step inquiry to

assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley*, 674 F.2d at 526; *see also Loza v. Mitchell*, 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler*, No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Wynne v. Renico*, 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996)).[2]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the

---

[2] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico*, 595 F. Supp.2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting habeas corpus relief based on that other ground; the Supreme Court recently denied certiorari review of *Wynne v. Renico*, 606 F.3d 867 (6th Cir.), *cert. denied*, 131 S.Ct. 2873 (2011).

>power, under *Stone,* to "second-guess the accuracy of the state courts' resolution of those claims." Thus, a "mistaken outcome" of a suppression hearing that has been conducted in a state trial court, standing alone, does not deny a habeas petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. . . . Thus, even "potentially meritorious Fourth Amendment claims" are barred by *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8–9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis,* 638 F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone,* . . . the correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by case review of state court determinations," but rather "is a review of whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul–Mateen v. Hofbauer,* No. 98–2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul–Mateen,* the court recognized that an exception was carved out in *Riley* for "egregious error in the application of fourth amendment principles" amounting to a refusal by the state courts to consider or apply controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious

11

misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone.*" *Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89–3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). To the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his Fourth Amendment claims in the state courts.

Petitioner was permitted to raise his claims to the trial court though a motion to suppress and the trial court held a hearing on the matter. (*See* Doc. 17, Ex. 12, p. 4). Petitioner further raised the alleged error on appeal to the Ohio Court of Appeals. As is set forth above, the Ohio Court of Appeals carefully considered the trial court's factual findings and petitioner's claims before concluding that the trial court did not err in overruling his motion to suppress. The appellate court found that there was probable cause to stop petitioner's vehicle, that he was not under arrest during the stop, and that the length of time that petitioner was stopped was proper. (Doc. 17, Ex. 12). Although petitioner failed to submit a timely application for reconsideration of his appeal or a direct appeal to the Ohio Supreme Court, petitioner also had the opportunity to

seek review of the Ohio Court of Appeals' decision finding that the trial court did not err in overruling his motion to suppress. (*See* Doc. 17, Ex. 14).

After review of the entire record, the Court concludes that petitioner's sole ground for relief, challenging the denial of petitioner's motion to suppress evidence seized in violation of the Fourth Amendment, is barred from review under the Supreme Court's *Stone* decision. The undersigned is convinced that petitioner was provided a full and fair opportunity in the state courts to litigate the claim, and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Cf. Stone,* 428 U.S. at 494–95. Accordingly, federal habeas review is prohibited under *Stone*.[3]

Accordingly, in sum, the undersigned concludes that petitioner's sole ground for relief is not cognizable in federal habeas corpus. Therefore, respondent's motion to dismiss (Doc. 17) should be **GRANTED**, and the instant habeas corpus petition (Doc. 4) should be **DISMISSED** with prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 17) be **GRANTED**, and that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DISMISSED** with prejudice on the ground that the single ground raised in the petition is not cognizable in federal habeas corpus.

2. A certificate of appealability should not issue with respect to the claim alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000)

---

[3] Having found that petitioner's sole ground for relief is not cognizable in federal habeas corpus, the Court need not address whether or not petitioner procedurally defaulted this claim.

(citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

    3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 4/30/2012

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| OTIS M. KELLY, JR., <br>     Petitioner, | Case No. 1:11-cv-254 |
| vs. | Dlott, J. <br> Litkovitz, M.J. |
| WARDEN, LONDON <br> CORRECTIONAL INSTITUTION, <br>     Respondent. | **NOTICE** |

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ✓ ☑ Agent ☐ Addressee<br>B. Received by (Printed Name) \| C. Date of Delivery |
| 1. Article Addressed to:<br><br>Otis M Kelly, Jr. 615-475<br>London Corr. Inst.<br>PO Box 69<br>1580 State Route 56<br>London, OH 43140 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered     ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7003 2260 0002 6723 4750 |

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540